IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

VISION MOTOR CARS, INC.,           )
                                   )
              Plaintiff,           )
                                   )
       v.                          )                    1:13-CV-317
                                   )
VALOR MOTOR COMPANY, et al.,       )
                                   )
              Defendants.          )

## MEMORANDUM OPINION AND ORDER

Catherine C. Eagles, District Judge.

This matter is before the Court on motions to dismiss filed by defendant Gene Gabus,

(Doc. 10), and defendants Valor Motor Company, Noble Automotive Group, and Robert Smith.

(Doc. 14.)  The plaintiff asserts several claims arising under the trademark laws of the United

States based on allegations that the defendants used or are responsible for the use by others of the

plaintiff's trademark "Vision Motor Cars."[1]  The plaintiff also asserts state law claims arising

out of the same factual allegations.  The defendants contend the Court lacks personal jurisdiction.

For reasons stated below, the Court finds it does not have personal jurisdiction over any of the

defendants, and the action will be dismissed.

## BACKGROUND

When a court's exercise of personal jurisdiction is challenged pursuant to a Rule 12(b)(2)

motion, the plaintiff must prove the existence of a ground for jurisdiction by a preponderance of

the evidence.  *See Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989); *Mylan Labs., Inc. v.*

---

[1] To distinguish between the plaintiff, Vision Motor Cars, and an entity associated with the
defendants, Vision Motor Company, the Court will refer to the plaintiff as "Vision Motor Cars"
or "the plaintiff," and the entity associated with defendants as "the Vision Company."

*Akzo, N.V.*, 2 F.3d 56, 60 (4th Cir. 1993). When a court examines personal jurisdiction "on the basis only of motion papers, supporting legal memoranda and the relevant allegations of a complaint, the burden on the plaintiff is simply to make a prima facie showing" of personal jurisdiction. *Combs*, 886 F.2d at 676. The Court must "construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id.*

Although the standard may be lenient, the Court need not "credit conclusory allegations or draw farfetched inferences." *Masselli & Lane, PC v. Miller & Schuh, PA*, 215 F.3d 1320 (table), 2000 WL 691100, at *1 (4th Cir. 2000) (quoting *Ticketmaster-N.Y., Inc. v. Alioto,* 26 F.3d 201, 203 (1st Cir. 1994)). Blanket conclusory allegations as to multiple defendants are insufficient. *Cf. Sterne v. Thompson,* No. 1:05-CV-477JCC, 2005 WL 2563179, at *2 (E.D. Va. Oct. 7, 2005) (addressing Rule 12(b)(6) motion). A parent-subsidiary relationship does not by itself support jurisdiction. *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 276 (4th Cir. 2005). More must be shown, such as an agency relationship or another reason to pierce the corporate veil. *See Mylan Labs.*, 2 F.3d at 61. Plaintiffs must base their claim for personal jurisdiction "on specific facts set forth in the record." *Magic Toyota, Inc. v. Se. Toyota Distribs., Inc.*, 784 F. Supp. 306, 310 (D.S.C. 1992).

The allegations of the complaint are taken as true only if they are not controverted by evidence from the defendant. *See Wolf v. Richmond Cnty. Hosp. Auth.*, 745 F.2d 904, 908 (4th Cir. 1984). Once a defendant presents evidence indicating that the requisite minimum contacts do not exist, the plaintiff must come forward with affidavits or other evidence in support of its position. *See Clark v. Remark*, 993 F.2d 228 (table), 1993 WL 134616, at *2 (4th Cir. 1993); *Vogel v. Wolters Kluwer Health, Inc.*, 630 F. Supp. 2d 585, 594 (M.D.N.C. 2008); *see also IMO*

2

*Indus., Inc. v. SEIM S.R.L.*, No. 3:05–CV–420–MU, 2006 WL 3780422, at *1 (W.D.N.C. Dec. 20, 2006) (holding that a plaintiff "may not rest on mere allegations where the defendant has countered those allegations with evidence that the requisite minimum contacts do not exist"). Where both sides present evidence about personal jurisdiction, factual conflicts must be resolved in favor of the party asserting jurisdiction for the limited purpose of determining whether a prima facie showing has been made. *See Mylan Labs.*, 2 F.3d at 62; *Barclays Leasing v. Nat'l Bus. Sys., Inc.*, 750 F. Supp. 184, 186 (W.D.N.C. 1990); *see also Combs*, 886 F.2d at 676.

## FACTS

The complaint, with few exceptions, groups the defendants together and is not specific about the activities or actions of any particular defendant. The only allegation in the complaint concerning the activities of any defendant or of the defendants as a group in or directed towards North Carolina reads, in its entirety: "Defendants caused tortuous [sic] injury in the [Middle District of North Carolina] by acts or omissions outside the district, while regularly doing or soliciting business in the State of North Carolina, pursuant to N.C. GEN. STAT. § 1-75.4." (Doc. 1 at ¶ 3.)

The defendants have come forward with specific and detailed evidence concerning the nature and extent of their contacts with North Carolina. (*See generally* Doc. 11-1; Doc. 15-1; Doc. 20-1; Docs. 26-1 to 26-3.) The plaintiff has responded with affidavits concerning website content and with copies of news articles and website pages, which the Court will consider. (Docs. 18-1 to 18-7, 24-1 to 24-7.) The Court views the evidence in the light most favorable to the plaintiff, but notes that these materials do not contradict the defendants' evidence in any substantial or material way. *See Combs*, 886 F.2d at 676.

1. The Vision Company

The Vision Company was incorporated in Delaware in 2012. (Doc. 15-1 at ¶ 2.) It was a business originally organized to market compressed natural gas ("CNG") vehicles. (Doc. 15-1 at ¶ 18.) In January 2012, it "reserved its name in South Carolina," established a domain registration for www.visionmotorcompany.com, and designed a webpage at that site. (Doc. 15-1 at ¶¶ 19-20.) The website contained contact information for defendant Smith and defendant Gabus. (Doc. 24-1 at 3.) It stated that the Vision Company "will soon offer" CNG vehicles for sale, (Doc. 24-1 at 2), and included "links to view videos of cars and safety videos, a dealership inquiry form, and links to allow the viewer to view current natural gas prices." (Doc. 24 at ¶ 3.) On its website, the Vision Company was identified as a "division" and "Wholly Owned Subsidiary" of defendant Noble. (Doc. 18-1 at 3-4.) The website listed Gabus Automotive Distributors, Inc., as the "Central, East & West Coast Distributor." (*Id.* at 3.) This statement was followed by a list of 39 states that included North Carolina. (*Id.* at 3.) Another entity was listed as the distributor for the northeast. (*Id.*)

The Vision Company ceased operations in August 2012 and never sold any vehicles. (Doc. 15-1 at ¶¶ 21-22.) It is not a defendant in this case. It has no offices, real property, bank accounts, telephone numbers, or employees in North Carolina, nor does it have an agent for service of process in North Carolina. (*Id.* at ¶¶ 6-12.) It did not and does not advertise in any print, television, or radio outlets in or directed to North Carolina and it has not exhibited any products at any trade shows in North Carolina. (*Id.* at ¶¶ 13-14.)

2. Valor

Beginning in approximately June 2012, visitors to www.visionmotorcompany.com were redirected to the internet home page of defendant Valor. (Doc. 1 at ¶ 25.) Valor was

4

incorporated in Delaware on September 20, 2012, and has its only place of business in South Carolina. (Doc. 15-1 at ¶¶ 23, 30; *see* Doc. 1 at ¶ 6.) Valor does not and did not own the Vision Company. (Doc. 15-1 at ¶ 24.) Valor has no offices, real property, bank accounts, telephone numbers, or employees in North Carolina, nor does it have an agent for service of process in North Carolina. (*Id.* at ¶ 31.) It does not advertise in any print, television or radio outlets in or directed to North Carolina, has not exhibited any products at any trade shows in North Carolina, and does not regularly do or solicit business in North Carolina. (*Id.* at ¶¶ 32-34.) Valor registered the domain name "www.valormotorcompany.com" and transferred content to that website from the "www.visionmotorcompany.com" website, changing all references from "Vision" to "Valor." (*Id.* at ¶¶ 25-26.) It advertises CNG cars on this website. (Doc. 18-5 at 3-4.) Valor has never engaged in any transactions with Plaintiff. (Doc. 15-1 at ¶ 35.) Valor has not sold any vehicles for or on behalf of Vision Motor Company in North Carolina or any other state. (*Id.* at ¶ 28.) Valor has not received any inquiries though its web site from anyone in North Carolina. (Doc. 26-1 at ¶ 9.)

3.   <u>Noble</u>

Noble was identified on the Vision Company's website as the owner of the Vision Company. (Doc 18-1 at 4.) It applied for a trademark on the word "Vision" for compressed natural gas vehicles, which was denied on April 4, 2012, because of potential confusion with two other marks, including plaintiff's mark. (Doc. 24-7 at 1-2.)

Noble is a corporation organized under Georgia law with its principal office in South Carolina. (Doc. 15-1 at ¶¶ 36-38; *see* Doc. 1 at ¶ 7.) It is not registered to do business in North Carolina and has no offices, real property, bank accounts, telephone numbers, or employees in North Carolina. (Doc. 15-1 at ¶¶ 37, 39.) It does not design, manufacture, or advertise its

products in North Carolina and does not solicit business in North Carolina. (*Id.* at ¶¶ 40-41.) It does not sell or ship any products to North Carolina customers and does not have an agent for service of process in North Carolina. (*Id.* at ¶¶ 42-43.) It does not advertise in any print, television, or radio outlets in or directed to North Carolina, and it has not exhibited any products at any trade shows in North Carolina. (*Id.* at ¶¶ 45-46.) Noble never engaged in any transactions with the plaintiff. (*Id.* at ¶ 50.)

      4.   <u>Robert Smith</u>

Mr. Smith is an officer of both Valor and Noble and was an officer of the Vision Company. (*Id.* at ¶¶ 2-4.) He is a citizen and resident of South Carolina. (*Id.* at ¶ 5.) He does not regularly do or solicit business in North Carolina, does not have any office or phone numbers in North Carolina, does not own any real property in North Carolina or have any bank accounts in North Carolina, does not have any employees or an agent for service of process in North Carolina, does not advertise in any print, television, or radio outlets in or directed to North Carolina, and has not exhibited any products at any trade shows in North Carolina. (*Id.* at ¶¶ 6-14.) He has never travelled to North Carolina in connection with the business of the Vision Company, Valor, or Noble and has not sold any vehicles on behalf of the Vision Company, Valor, or Noble in North Carolina or any other state. (*Id.* at ¶¶ 15-16.) On the website of the Vision Company, someone named Bob Smith was referenced as a contact for the Vision Company. (Doc. 18-1 at 3-4.)

      5.   <u>Gene Gabus</u>

Mr. Gabus is a citizen and resident of Iowa. (Doc. 11-1 at ¶ 2.) Mr. Gabus was identified by name on the Vision Company's website as connected with Gabus Automotive Distributors, Inc., which was identified on the website as the Vision Company's North Carolina distributor.

(Doc. 18-1 at 3.)  Mr. Gabus is an officer and director of Gabus Automotive Distributors.  (Doc. 18-4 at 2.)  He is not an officer, director, manager, or employee of the Vision Company, Valor, or Noble.[2]  (Doc. 11-1 at ¶ 14.)  Gabus Automotive Distributors entered into various agreements with Noble, but neither Mr. Gabus nor Gabus Automotive Distributors ever sold any cars for Noble.  (Doc. 22 at ¶¶ 3-5.)  Mr. Gabus did not recruit or train any dealers in North Carolina for Noble.  (*Id.* at ¶ 5.)  One news story indicates he has some business relationship with Noble and Mr. Smith as a distributor for Noble cars.  (Doc. 18-2 at 1-3.)  Another news story indicates he was a distributor for an entity called EnVision Motor Company in 33 states, including North Carolina.  (Doc. 18-3 at 2.)

Mr. Gabus does not regularly do or solicit business in North Carolina, does not have any office or phone numbers in North Carolina, does not own any real property in North Carolina or have any bank accounts in North Carolina, does not have any employees or an agent for service of process in North Carolina, does not advertise in any print, television, or radio outlets in or directed to North Carolina, and has not exhibited any products at any trade shows in North Carolina.  (Doc. 11-1 at ¶¶ 3-13.)  He has never travelled to North Carolina in connection with the business of the Vision Company, Valor, or Noble and has not sold any vehicles on behalf of the Vision Company, Valor, or Noble in North Carolina or any other state.  (*Id.* at ¶¶ 17-18.)  He has never engaged in any transactions with plaintiff.  (*Id.* at ¶ 26.)  Neither he nor Gabus Automotive Distributors has ever sold any cars for Noble in North Carolina or anywhere else.  (Doc. 22 at ¶¶ 3, 5.)

---

[2] The plaintiff alleges that Mr. Gabus is an officer or manager of Noble, (Doc. 1 at ¶ 9), but has not come forward with any evidence to that effect.

7

An entity denominated as "Vision Motor Company" with a Des Moines, Iowa, address had a web page at www.visionmotorcompanyofdesmoines.com on August 22, 2013, which contained material about CNG vehicles. (Doc. 18-6 at 1-3.) The street address on the web page was the same as for Gabus Automotive Distributors. (*See* Doc. 18-4 at 2; Doc. 18-6 at 1.) Gabus Automotive Distributors established the website in April 2012, before the Vision Company abandoned the "Vision" mark and adopted "Valor." (Doc. 22 at ¶ 6.) The website sought to promote the sale of CNG vehicles, but those vehicles were not present in the United States. (*Id.*) No inquiries, solicitations, or orders ever came through the site. (*Id.*)

## ANALYSIS

The allegations of the complaint do not provide a basis for personal jurisdiction of any defendant. The allegations are conclusory and make few specific factual assertions as to any particular defendant's contacts with North Carolina. These conclusory allegations need not be considered. *See Masselli & Lane*, 2000 WL 691100, at *1. The Court will therefore make its decision based on the detailed evidence submitted by the defendants and the evidence the plaintiff has offered in response.

A district court has personal jurisdiction over a non-resident defendant when two conditions are satisfied: "First, the exercise of jurisdiction must be authorized by the long-arm statute of the forum state, and, second, the exercise of personal jurisdiction must also comport with Fourteenth Amendment due process requirements." *Christian Sci. Bd. of Dirs. v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001); *see Miller v. Kite*, 313 N.C. 474, 476, 329 S.E.2d 663, 665 (1985); *Fran's Pecans, Inc. v. Greene*, 134 N.C. App. 110, 112, 516 S.E.2d 647, 649 (1999). The Court will examine each condition.

1.  <u>North Carolina's Long-Arm Statute</u>

The plaintiff appears to rely on Section 1-75.4(4)(a) of North Carolina's long-arm statute to satisfy the first condition required for asserting personal jurisdiction over non-resident defendants. This section provides:

> A court of this State . . . has jurisdiction over a person . . . under any of the following circumstances:
> . . . .
>> (4) Local Injury; Foreign Act. – In any action . . . claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury . . . :
>>
>>> a. Solicitation or services activities were carried on within this State by or on behalf of the defendant.

N.C. Gen. Stat. § 1-75.4(4)(a). This provision requires the plaintiff to demonstrate: "1) an action claiming injury to a North Carolina person or property; 2) that the alleged injury arose from activities by the defendant outside of North Carolina; and 3) that the defendant was engaging in solicitation or services within North Carolina at or about the time of the injury." *Fran's Pecans*, 134 N.C. App. at 113, 516 S.E.2d at 649-50 (internal quotation marks omitted). This provision should be "liberally construed in favor of establishing the existence of personal jurisdiction." *Id.* at 114, 516 S.E.2d at 650.

The defendants contend the plaintiff's action is not authorized by the long-arm statute because they were not engaging in solicitation or services in North Carolina at or about the time of the plaintiff's injury. (Doc. 20 at 1; Doc. 26 at 1-2.) Indeed, the defendants contend they have not done any business or had any contacts with North Carolina related to this action. (Doc. 20 at 1; Doc. 26 at 1-2.)

Unlike cases where the solicitation or services prong was satisfied, the plaintiff offers no evidence of any sales, visits, or phone calls related to the action by the defendants to North

Carolina.  *See, e.g.*, *Fran's Pecans*, 134 N.C. App. at 113-14, 516 S.E.2d at 650 (holding

solicitation or services prong satisfied because defendant admitted to numerous mail order sales

to North Carolina); *Carson v. Brodin*, 160 N.C. App. 366, 371, 585 S.E.2d 491, 495-96 (2003)

(holding solicitation or services prong satisfied by visits and phone calls to North Carolina);

*Haizlip v. MFI of S.C., Inc.*, 159 N.C. App. 466, 583 S.E.2d 427 (table), 2003 WL 21791639, at

*5 (2003) (holding solicitation or services prong satisfied because defendant made several calls

and sent representative to North Carolina).  The plaintiff's only evidence related to North

Carolina consists of a few websites and articles that mention North Carolina, along with dozens

of other states, as a possible location for future car sales by the defendants and one blog entry

from Valor's website that notes North Carolina and Oklahoma offer tax credits related to natural

gas vehicles.  (Doc. 18-1 at 3; Doc. 18-3 at 2; Doc. 18-5 at 3.)  There is no evidence of any actual

business solicitation or services rendered by the defendants in North Carolina.

Absent any evidence that any defendant was engaged in solicitation or services activities

at any point in North Carolina, the plaintiff's action is not authorized by North Carolina's long-

arm statute.  Therefore, the Court lacks personal jurisdiction over the defendants and the action

will be dismissed.

2.  Due Process

In the alternative, the Court finds that asserting personal jurisdiction over the defendants

would not comport with due process.  Before finding personal jurisdiction over the defendants,

the Court must determine "whether [each] defendant has such 'minimal contacts' with the forum

state that 'maintenance of the suit does not offend traditional notions of fair play and substantial

justice.'"  *Christian Sci. Bd. of Dirs.*, 259 F.3d at 215 (quoting *Int'l Shoe Co. v. Washington*, 326

U.S. 310, 316 (1945)).  "The question . . . is whether a defendant's contacts with the forum state

10

are so substantial that they amount to a surrogate for [physical] presence and thus render the exercise of sovereignty just . . . ." *ESAB Grp., Inc., v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

Opinions since *International Shoe* "have differentiated between general or all-purpose jurisdiction, and specific or case-linked jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, ___ U.S. ___, ___, 131 S. Ct. 2846, 2851 (2011). General jurisdiction exists when a foreign corporation's "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Id.* (quoting *Int'l Shoe*, 326 U.S. at 317). "[S]pecific jurisdiction is confined to adjudication of 'issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" *Id.* (quoting Arthur T. von Mehren & Donald T. Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L. Rev. 1121, 1136 (1966)).

The plaintiff contends that the Court has jurisdiction over each defendant because each defendant "acted intentionally to cause harm to Plaintiff's (a North Carolina resident) legally protected interest, knowing that the conduct would cause harm at the Plaintiff's domicile to his property interest there." (Doc. 16 at 1 (regarding defendant Gabus; Doc. 23 at 1 (regarding defendants Valor, Noble, and Smith).) While not completely clear, it appears the plaintiff is arguing that the Court has specific jurisdiction over each defendant. Out of an abundance of caution, the Court will address both general and specific jurisdiction.

A.  General Jurisdiction

"To establish general jurisdiction over the defendant, the defendant's activities in the State must have been continuous and systematic, a more demanding standard than is necessary for establishing specific jurisdiction." *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d

11

707, 712 (4th Cir. 2002) (internal quotation marks omitted). "[A]ttenuated connections" that do not rise to the level of "continuous and systematic general business contacts" are insufficient. *Goodyear Dunlop Tires*, ___ U.S. at ___, 131 S. Ct. at 2857. Nor are a small number of sales to customers within the forum state adequate to impart personal jurisdiction. *See ESAB Grp.*, 126 F.3d at 624 (holding no general jurisdiction available for a defendant with twenty-six customers in forum state which make up less than .01% of its nationwide sales volume); *Baker v. Patterson Med. Supply, Inc.*, No. 4:11cv37, 2011 WL 7153948, at *7 & n.8 (E.D. Va. Nov. 17, 2011) (Stillman, M.J., report and recommendation adopted) (holding that distribution of unknown number of catalogues in forum state and maintenance of a website do not give rise to the exercise of jurisdiction).

No defendant has an office, employees, or agents in North Carolina. No defendant owns property in the state or has a business relationship with the plaintiff. No defendant has made any sale in North Carolina. There are not even attenuated contacts with the state by any defendant, much less continuous and systematic contacts. Therefore, the Court does not have general jurisdiction over the defendants.

B. Specific Jurisdiction

Specific jurisdiction exists when the "suit aris[es] out of or [is] related to the defendant's contacts with the forum." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984). To determine the existence of specific jurisdiction, a court considers: "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiffs' claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan*, 293 F.3d at 712 (internal alterations and quotation marks omitted); *see also Goodyear Dunlop*

*Tires*, ___ U.S. at ___, 131 S. Ct. at 2854. "If, and only if, [a court] find[s] that the plaintiff has satisfied this first prong of the test for specific jurisdiction need [the court] move on to a consideration of prongs two and three." *Consulting Eng'rs Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009).

While the analysis is not a mechanical one, the Fourth Circuit has summarized the factors the courts have considered in deciding whether a defendant "purposefully availed" itself of the privilege of doing business in a state. *Id.* Those factors include:

- whether the defendant maintains offices or agents in the forum state;
- whether the defendant owns property in the forum state;
- whether the defendant reached into the forum state to solicit or initiate business;
- whether the defendant deliberately engaged in significant or long-term business activities in the forum state;
- whether the parties contractually agreed that the law of the forum state would govern disputes;
- whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship;
- the nature, quality and extent of the parties' communications about the business being transacted; and
- whether the performance of contractual duties was to occur within the forum.

*Id.* at 278 (internal citations omitted).

The only factor that the plaintiff points to in support of its claim of jurisdiction is that each defendant either reached into North Carolina to solicit or initiate business via an internet site, or is responsible for some other defendant's conduct reaching into the state. (*See* Doc. 16 at 8-10; Doc. 23 at 11-12.) The plaintiff has offered no evidence or made any argument that any of the other factors weigh in its favor, and the defendants' uncontradicted evidence establishes that none of the defendants maintain offices or agents in North Carolina, own property in the forum state, or deliberately engaged in significant or long-term business activities in the forum state. The defendants' evidence further establishes without contradiction that no defendant had any

13

contractual agreements with the North Carolina plaintiff, made any in-person contact with the

plaintiff, or had any communications with the plaintiff.

> When specific jurisdiction is asserted based on electronic activity by a defendant,
>
> > a State may, consistent with due process, exercise judicial power over a person outside of the State when that person (1) directs electronic activity into the State, (2) with the manifested intent of engaging in business or other interactions within the State, and (3) that activity creates, in a person within the State, a potential cause of action cognizable in the State's courts.

*ALS Scan*, 293 F.3d at 714. It is not enough that the defendant placed information on the

internet; there must be a manifest intent to target the forum state. *Id.*; *see also Panavision Int'l,*

*L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) (holding that "something more" than

posting and accessibility is needed to "indicate that the defendant[s] purposefully (albeit

electronically) directed [their] activity in a substantial way to the forum state").

In *Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc.*, 334 F.3d 390, 399 (4th Cir.

2003), the Fourth Circuit applied the *ALS Scan* framework in a trademark infringement case.

The Maryland plaintiff alleged that the Illinois defendant infringed its trademark rights in the

mark "CAREFIRST." *Id.* at 393. The defendant challenged personal jurisdiction, and the

plaintiff relied upon allegations that the defendant "expressly aimed its trademark-infringing

conduct at the forum state" when it "set up a semi-interactive website that was accessible" from

the forum state. *Id.* at 398. The defendant had received donations from Maryland, but only one

such donation through its website. *Id*. at 394-95.

The court held that whether the defendant intended to target the forum state "can be

determined only from the character of the website at issue." *Id*. at 400. The relevant factors are

the level of interactivity of the website, whether the website has a commercial nature, whether

there were any online exchanges between the defendant and forum state residents, and whether

the overall content of the website is local or targeted to the forum state audience. *Id*. at 400-01. The court acknowledged that the location of the plaintiff's injury was relevant, but held that it "must ultimately be accompanied by the defendant's own sufficient minimum contacts with the state." *Id.* at 401 (quoting *Young v. New Haven Advocate*, 315 F.3d 256, 262 (4th Cir. 2002)) (internal alterations omitted). Because the defendant had only set up a "generally accessible, semi-interactive Internet website, it did not thereby direct electronic activity into Maryland with the manifest intent of engaging in business or other interactions within that state in particular," and thus there was no basis for personal jurisdiction. *Id.* This was so despite the fact that Maryland has "a strong interest in adjudicating disputes involving the alleged infringement of trademarks owned by resident corporations." *Id*.; *see also Young*, 315 F.3d at 264 (holding that articles from two Connecticut newspapers on Virginia prison that were posted online were aimed at Connecticut and provided insufficient internet contacts for Virginia courts to assert personal jurisdiction over defendants).

The plaintiff contends this Court can exercise specific jurisdiction over defendants because they launched semi-interactive websites, these websites and other articles mention North Carolina in the context of franchises and a tax credit, and these activities involved trademark violations. (Doc. 16 at 9-10; Doc. 23 at 11-12.) Thus, the plaintiff contends, it has satisfied the three prongs of *ALS Scan* and has established a prima facie case to support jurisdiction.

Virtually all of the allegations and evidence concern use of the mark by the Vision Company on its website, yet the Vision Company is not a defendant. The plaintiff appears to contend that the other defendants are responsible for the infringement by the Vision Company. There are two problems with this contention.

First, the Vision Company does not have sufficient contacts to be brought into court in North Carolina, so its contacts are insufficient to provide a basis for jurisdiction over a person or entity who might have derivative liability. *See Saudi*, 427 F.3d at 276-77; *Mylan Labs.*, 2 F.3d at 61. The plaintiff has offered no evidence that the Vision Company had the "manifest intent" of targeting people in North Carolina. The Vision Company website had some interactivity and would allow a person interested in becoming a dealer in any state to make an inquiry. But it would not allow any commercial transaction or sale to actually take place, and indeed it appears that no inquiries were ever received from anyone in North Carolina. While the website did list North Carolina as a place where the Vision Company might sell cars in the future, all forty-nine other states were also listed, as were many foreign countries.

Second, the plaintiff has offered no evidence to support a principal/agency relationship and no evidence to support any reason to pierce the Vision Company's corporate veil. In the absence of such evidence, or even allegations, personal jurisdiction cannot be premised on derivative liability. *See Saudi*, 427 F.3d at 276-77; *Mylan Labs.*, 2 F.3d at 61-62; *Harris v. Deere and Co.*, 223 F.2d 161, 162-63 (4th Cir. 1955).

In the absence of derivative liability, specific jurisdiction can exist only if a defendant committed some act in or directed towards the forum state that gives rise to the cause of action. *See ALS Scan*, 293 F.3d at 714 (holding that specific jurisdiction may be based on a foreign defendant's internet activity directed at the forum state *and* causing an injury that gives rise to a potential claim in the forum state). In this case, that means that each defendant must have infringed the trademark on the internet as part of activity directed at North Carolina or that the defendant is somehow responsible for the acts of another defendant who infringed and caused damage in North Carolina.

16

As to the defendant Valor, there is some evidence that visitors to the www.visionmotorcompany.com website began rolling over to the Valor website. Yet there is still no evidence that Valor had the "manifest intent" of targeting people in North Carolina. Valor's website does not show any particular focus on North Carolina, and there have been no transactions or even inquiries with anyone from North Carolina through the website or as a result of the website. Plaintiff points to a blog entry on Valor's website that mentions a North Carolina tax credit for natural gas vehicles. However, this single sentence is one example in a broader discussion of financial incentives for natural gas vehicles in the United States. This is far less than the targeting seen in *Young*, where the news articles focused on the Virginia prison and one article mentioned the allegedly defamed warden by name, and yet even there the Fourth Circuit did not find sufficient intent to target the forum state. 315 F.3d at 263-64.

There is no evidence that Valor, through its website, manifested an intent to target North Carolina. Because the plaintiff cannot satisfy *ALS Scan*, the Court finds that it does not have personal jurisdiction over defendant Valor.

As to the other defendants, there are no allegations or evidence concerning any other defendant's use of the allegedly infringing domain name or trademark at all, much less that any particular defendant used the trademark with the manifest intent of targeting people in North Carolina. To the contrary, the evidence reveals the defendants hope to one day create a domestic market for natural gas vehicles, and North Carolina is merely one of fifty states in that plan. (*See* Doc. 20-1 at ¶¶ 3-6; Doc. 26-1 at ¶ 10.) Defendants have not sold any natural gas vehicles or established any dealerships or franchises, in North Carolina or elsewhere, for these sales. (Doc. 20-1 at ¶¶ 3-6; Doc. 26-1 at ¶ 10.) Indeed, all of the evidence indicates the vehicles sought by the defendants are not yet available in the United States. (*See* Doc. 20-1 at ¶¶ 3-6; Doc. 26-1 at ¶

10.)  Such hopeful, eventual, or someday availment of the North Carolina market is not purposeful availment under our law.

Because no defendant purposefully availed itself of the benefits and privileges of the forum state and because the trademark cause of action does not arise out of any defendant's activities directed at North Carolina, the Court does not have specific jurisdiction over any defendant.  Under the circumstances of this case, the exercise of personal jurisdiction over the defendants would be constitutionally unreasonable, considering the burdens on and interests of the parties.  *See Consulting Eng'rs Corp.*, 561 F.3d at 279.  Therefore, the action will be dismissed because the Court lacks personal jurisdiction over the defendants.

It is **ORDERED** that Defendants' Motions to Dismiss for Lack of Jurisdiction, (Docs. 10, 14), are **GRANTED**.

This the 6th day of November, 2013.

_____
UNITED STATES DISTRICT JUDGE